## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| Robert J. Gargas | * | Case No. 3:20-cv-590 |
| 304 Deline Drive | | |
| Toledo, Ohio 43615 | * | Judge |
| | | |
| Plaintiff, | * | Magistrate Judge |
| | | |
| v. | * | |
| | | **COMPLAINT** |
| Estes Express Lines, Inc. | * | |
| C/O Corporation Service Company | | **Jury Demand Endorsed Hereon** |
| 50 West Broad Street, Suite 1330 | * | |
| Columbus, Ohio 43215 | | |
| | * | |
| Defendant. | | |
| | * | |

Now comes Plaintiff Robert J. Gargas ("Plaintiff" or "Mr. Gargas"), through undersigned counsel, for his complaint against Estes Express Lines, Inc. ("Estes" or "Defendant"), stating as follows:

## I.    INTRODUCTION

1.      This is an action to remedy violations of the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601, *et seq.*, ("FMLA") and Ohio law prohibiting disability discrimination/retaliation under Ohio Revised Code Chapter 4112 ("Chapter 4112"). Due to Defendant's interference with Plaintiff's FMLA rights, its retaliatory conduct for Plaintiff's protected activity, and discriminatory conduct towards Plaintiff because of his disability and/or request for an accommodation, Plaintiff has suffered a loss of wages, compensation, and benefits as well as other non-pecuniary losses as indicated herein to which Defendant is liable.

## II.     JURISDICTION AND VENUE

2.      The jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1331 for violations of the FMLA and 28 U.S.C. § 1367 for violations of state law so related to the claims in the action within the court's original jurisdiction that together they form part of the same case or controversy under Article III of the United States Constitution.

3.      Venue is proper in this forum pursuant to 28 U.S.C. §1391, as a substantial part of the events or omissions giving rise to the claim occurred in the Northern District of Ohio, Western Division.

## III.    PARTIES

4.      Plaintiff is a person and an "eligible employee" within the meaning of the FMLA because he was employed by Defendant other than in domestic service for at least twelve (12) months and for at least 1,250 hours of service during the twelve (12) months before he sought FMLA leave and was employed at a worksite where fifty (50) or more employees are employed within seventy-five (75) miles of that worksite. *See* also 29 C.F.R. § 825.110. Further stating, Plaintiff was an "employee" as that term is defined under Chapter 4112 during all times relevant.

5.      Defendant Estes is a foreign corporation, authorized to do business in Ohio, and conducts business in this judicial district. At all times relevant hereto, Defendant has been an "employer" of Plaintiff as that term is defined in the FMLA because it is engaged in commerce or in any industry or activity affecting commerce that employs or employed at least fifty (50) or more employees at or within a 75-mile radius of the Plaintiff's worksite for each working day during each of 20 or more calendar workweeks in the year of or the calendar year preceding the events giving rise to this cause of action. Further stating, Defendant was an "employer" as that term is defined in Chapter 4112.

IV.    **FACTS**

6.    Plaintiff began his employment with Estes in March 2014 until he was terminated on or about June 20, 2019. Defendant employed Plaintiff as a driver and was paid on an hourly basis and never on a salaried basis.

7.    As a driver, his primary job duties consisted of driving across the Northwest Ohio region on a regular basis, transporting goods on behalf of Estes' customers. By all accounts, he was a valuable employee of Estes.

8.    During all times relevant, he was qualified to perform the essential functions of his position with or without a reasonable accommodation.

9.    Plaintiff suffers from supraventricular tachycardia, ("SVT"), which he was diagnosed with in 2017. SVT causes heart palpitations, a fluttering in his chest, shortness of breath, and/or lightheadedness/dizziness.

10.    As such, Plaintiff's SVT constitutes a serious health condition under the FMLA and a disability under Ohio law because it is a physical impairment that substantially limits his ability to perform one or more major life activities and/or life functions, including but not limited to standing, walking, and breathing due to his abnormal heart rate (SVT hereinafter used interchangeably with serious health condition/disability unless otherwise indicated). Further, it requires continuing treatment by his health care provider.

11.    Despite Plaintiff's SVT, he is still a "qualified individual" because he can perform the essential functions of his position with or without a reasonable accommodation.

12.    In 2017, at the time of his diagnosis, Plaintiff's physician recommended that Plaintiff be treated with medication and a strict sleep schedule, among other treatments. Plaintiff complied with his physician's medical recommendation.

13.     From that point forward, Plaintiff performed the essential functions of his position within his work restrictions without any issues. Plaintiff's schedule did not pose any undue hardship on Estes.

14.     However, in May 2019, contrary to Plaintiff's physician's work restrictions, Estes informed Plaintiff that he would be required to drive at night and have irregular shifts. At this time, Plaintiff reminded Estes that he suffered from SVT and that his doctor would likely not approve of these unilateral changes to his schedule.

15.     Further, he requested a reasonable accommodation that he be permitted to maintain a regular driving schedule during daylight hours consistent with his physician's work restrictions. However, Defendant ceased Plaintiff's previously approved accommodation and/or denied Plaintiff's renewed request for an accommodation. Instead, it forced Mr. Gargas to drive at night/work irregular shifts without any interactive process.

16.     During this time, Plaintiff again requested that he be returned to his set schedule consistent with his physician's work restrictions given the set schedule was approved by Estes and did not pose any hardship on Defendant.

17.     Instead, on or about June 20, 2019, Estes removed Plaintiff from the schedule to stop working, unilaterally required him to use FMLA leave beginning on or about June 22, 2019, and, during the forced time off, required Plaintiff to undergo a sleep study in July, 2019 even though a sleep study was entirely unnecessary. Defendant would not allow Plaintiff to return to work under any circumstances until the unnecessary sleep study was complete.

18.     On June 24, 2019, Plaintiff's primary care physician via letter advised Estes that (1) he had been treating Plaintiff since 2003 and has extensive experience with his health; (2) opined that Mr. Gargas is very clearly a morning person and that by 9 pm he is asleep because it

is unavoidable; (3) he cannot tolerate a major change in circadian rhythm; and (4) "for the sake of your own liability, and for the safety of my patient and the general public, we should not take him off of daytime driving of trucks or equipment" and, even if a sleep deprivation sleep study was conducted, it wouldn't change the result because it will not prove safe to drive at night with absolute surety.

19.     Amber Reed ("Ms. Reed"), Benefits Administrator of Estes, informed Mr. Gargas that he needed to complete FMLA paperwork and he was subsequently placed on FMLA leave.

20.     As a result of Defendant's conduct outlined above, Plaintiff was forced to use some of his FMLA leave in lieu of working even though he successfully performed his job duties consistent with his physician's work restrictions of no night-time driving. On or about July 16, 2019, Plaintiff underwent a sleep study.

21.     Not surprisingly, the results reflected that he could not drive at night – the same restrictions imposed upon him by his physician and the same schedule he successfully performed his job prior to Estes forcing him off of work on June 20, 2019. As such, Plaintiff's physician reviewed the results of the sleep study and released him to return to work with limited night driving until 10:00 pm.

22.     Plaintiff then called Defendant and requested to be reinstated to his position, which was refused by Estes.

23.     On or about August 23, 2019, Ashley Henning ("Henning"), Benefits Administrator of Estes, indicated via letter that Mr. Gargas needed to re-certify his FMLA because it expired.

24.     Via a letter dated September 3, 2019, Plaintiff's primary care physician again opined that Plaintiff could not work night shift.

25.     Due to the fact that Estes would not respond, as recently as September 10, 2019, Plaintiff sent a letter via facsimile to Ms. Reed and Ms. Henning – Defendant's HR representatives. In the letter, Plaintiff again respectfully indicated as follows:

> "I presented medical to Estes Trucking confirming that I had a medical condition which precluded night time driving. I had no other driving restrictions but I was taken out of my driving position by the safety department until I had a sleep study. I submitted updated medical on 9-4-19 confirming that I could work from 5:00 or 6:00am to 10:00PM daily in my regular driving position without restrictions.
>
> Pursuant to my approved FMLA leave as of 6-24-19, please advise when I be reinstated to my position.
>
> Thank you."

26.      In response, instead of responding to Mr. Gargas' requests to be re-instated or his physician's letters, Estes sent Mr. Gargas a letter on September 11, 2019, which informed him that he had exhausted his FMLA leave given he was on (forced) medical leave from June 24, 2019. The letter also outlined that a failure to return to work by September 16, 2019 would result in termination.

27.     Finally, Estes required Plaintiff to obtain a fitness-for-duty certificate in order to be restored to employment even though Estes was on notice many times that Mr. Gargas could continue working (without issue) under his previously approved schedule.

28.     Estes never returned him to his position and terminated his employment.

29.     Thus, by forcing Plaintiff off of work and to use FMLA leave and ultimately exhaust his FMLA leave, failing to reinstate him to the position, and terminating Plaintiff's employment after his FMLA leave was exhausted even though it should have never been exhausted had Defendant kept Plaintiff's accommodation (no driving at night), Defendant's conduct

constitutes FMLA interference and/or retaliation for exercising or attempting to exercise his FMLA rights.

30.     Furthermore, Defendant failed to engage in any interactive process, ceased its accommodation and/or failed to accommodate Plaintiff's disability, terminated Plaintiff because of his disability, actual or perceived, used his medical leave as a negative factor in his employment, and/or for having a record of being disabled in violation of Chapter 4112.

**V.     CAUSES OF ACTION**

**COUNT I**
**(FMLA Interference with Rights - 29 U.S.C. § 2615, *et seq.*)**

31.     All the preceding paragraphs are realleged as if fully rewritten herein.

32.     At all times relevant, Plaintiff is a person employed by Defendant other than in domestic service for at least twelve (12) months and for at least 1,250 hours of service during the twelve (12) months before Defendant interfered with Plaintiff's FMLA rights as described above.

33.     At all times relevant, Defendant is an "employer" as defined by the FMLA under 29 U.S.C. § 261(4)(A)(ii)(I) because it is engaged in commerce or in any industry affecting commerce that employs or employed at least fifty (50) or more employees at or within a 75-mile radius of the Plaintiff's worksite for each working day during each of 20 or more calendar workweeks in the year of or the calendar year preceding the events giving rise to this cause of action.

34.     Defendant interfered with Plaintiff's FMLA rights by taking the following non-exhaustive list of actions:  (1) forcing him to take FMLA leave instead of allowing him to work with a modified schedule as a reasonable accommodation; (2) holding his use of medical leave for his disability as a negative factor in Plaintiff's employment given he was forced to utilize FMLA leave in lieu of a reasonable accommodation even though Estes provides modified work schedules

and/or other reasonable accommodations to work rather than take unpaid leave; (3) terminating his employment; (4) refusing to permit him to return to work despite being cleared by his physician to work with an accommodation; and (5) otherwise treating him less favorably than similarly situated employees who after reasonable opportunity for discovery are not disabled, actual or perceived, and who do not have a record of a disability and/or FMLA leave.

35.    By engaging in the foregoing conduct, Defendant has interfered with, restrained, and/or denied Plaintiff's exercise of or attempt to exercise his FMLA rights, in violation of 29 U.S.C. § 2615(a)(1).

36.    Defendant's conduct was willful in its violations of the FMLA.

37.    As a result of Defendant's interference, Plaintiff was harmed in the fact that he was unlawfully terminated while exercising or attempting to exercise his FMLA rights and denied benefits to which he is entitled under the FMLA.

38.    As a direct a proximate result of Defendant's actions, Plaintiff has suffered damages, in accordance with 29 U.S.C. § 2617(a), and entitling him to reinstatement and to recover double his actual damages in liquidated damages, equitable relief as this Court may deem appropriate, interest, their attorneys' fees, and costs.

## COUNT II
### (FMLA Retaliation - 29 U.S.C. § 2615, *et seq.*)

39.    All of the preceding paragraphs are realleged as if fully rewritten herein.

40.    Defendant retaliated against Plaintiff for exercising or attempting to exercise his FMLA rights by taking the following non-exhaustive list of actions: (1) forcing him to take FMLA leave instead allowing him to work with a modified schedule as a reasonable accommodation; (2) holding his use of medical leave for his disability as a negative factor in Plaintiff's employment given he was forced to utilize FMLA leave in lieu of a reasonable accommodation even though

Estes provides modified work schedules and/or other reasonable accommodations to work rather than take unpaid leave; (3) terminating his employment; (4) refusing to permit him to return to work despite being cleared by his physician to work with an accommodation; and (5) otherwise treating him less favorably than similarly situated employees who after reasonable opportunity for discovery are not disabled, actual or perceived, and who do not have a record of a disability and/or FMLA leave.

41.     By engaging in the foregoing conduct, Defendant has retaliated against Plaintiff's attempt to or exercise of his FMLA rights, in violation of 29 U.S.C. § 2615(a) and (b).

42.     Defendant's conduct was willful in its violations of the FMLA.

43.     The Defendant's foregoing actions were taken in bad faith and without reasonable grounds for believing that its acts or omissions were not a violation of 29 U.S.C. § 2615, causing Plaintiff to lose wages, salary, and employment benefits and entitling him to reinstatement and to recover double his actual damages in liquidated damages, equitable relief as this Court may deem appropriate, interest, his attorneys' fees, and costs.

## COUNT III
### (Disability Discrimination - Ohio Revised Code § 4112.02, *et seq.*)

44.     All of the preceding paragraphs are realleged as if fully rewritten herein.

45.     At all times relevant, Plaintiff was an employee and Defendant was an employer as those terms are defined in R.C. § 4112.01, *et seq.*

46.     At all times relevant herein, Plaintiff was disabled, had a record of being disabled, or was regarded as being disabled as defined under Chapter 4112, *et seq.*

47.     At all times relevant herein, Plaintiff was able to perform the essential functions of his job despite his disability.

48.     Defendant knew that Plaintiff was disabled and/or regarded him as disabled.

49.     Plaintiff's use of medical leave as described above was reasonable and definite in duration.

50.     Defendant discriminated against Plaintiff because of his disabilities by taking the following non-exhaustive list of actions: (1) denying him reasonable accommodation; (2) holding his use of medical leave for his disability as a negative factor in Plaintiff's employment given he was forced to utilize FMLA leave in lieu of a reasonable accommodation even though Estes permits employees to work modified schedules or other reasonable accommodations rather than take unpaid leave; (3) terminating his employment; (4) refusing to permit him to return to work despite being cleared by his physician to work with an accommodation; and/or (5) otherwise treating him less favorably than similarly situated employees who after reasonable opportunity for discovery are not disabled, actual or perceived, and who do not have a record of a disability and/or medical leave.

51.     As such, Defendant has violated Chapter 4112, *et seq.*, by discriminating against Plaintiff based on his actual or perceived disability or his record of being disabled.

52.     By Defendant's foregoing omissions and commissions, Defendant violated Ohio Revised Code § 4112.02(A).

53.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages as outlined herein.

54.     Defendant's conduct was willful, wanton, reckless, and/or malicious for which Defendant is liable for compensatory damages, punitive damages, reasonable attorneys' fees, costs, declaratory and injunctive relief, and all other relief available under Ohio law.

## COUNT IV
### (Failure to Engage in the Interactive Process and/or Provide Reasonable Accommodation - R.C. § 4112.02, *et seq.*)

55.     All of the preceding paragraphs are realleged as if fully rewritten herein.

56.     At all times relevant herein, Plaintiff was disabled, had a record of being disabled, or was regarded as being disabled as defined under Chapter 4112, *et seq.*

57.     Despite his physical impairment, Plaintiff was able to perform the essential functions of his job with or without a reasonable accommodation. Accordingly, Plaintiff was an "otherwise qualified" individual.

58.     Defendant knew Plaintiff was disabled and/or regarded him as disabled.

59.     Defendant discriminated against Plaintiff by taking the following non-exhaustive list of actions: (1) failed to engage in the interactive process; (2) failed to accommodate and/or failed its ongoing duty to accommodate him; (3) terminated him because of his disability, actual or perceived; (4) terminated him in retaliation for requesting an accommodation in the form of reasonable and definite medical leave as alleged herein; and/or (5) treated him less favorably in the terms and conditions of employment than similarly situated employees who do not suffer from a disability, actual or perceived, or who did not request medical leave.

60.     Defendant violated Chapter 4112, *et seq* by failing to accommodate Plaintiff's disability and engage in a good faith interactive process to determine an objectively reasonable accommodation for his disability.

61.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages as outlined herein.

62.     Defendant's conduct was willful, wanton, reckless and/or malicious for which Defendant is liable for compensatory damages, punitive damages, reasonable attorneys' fees, costs, declaratory and injunctive relief, and other relief available under Ohio law.

## COUNT V
### (Retaliation - Ohio Revised Code § 4112.02(I))

63.     All of the preceding paragraphs are realleged as if fully rewritten herein.

64.     Plaintiff engaged in protected activity by requesting reasonable accommodations under Ohio law, opposing discriminatory treatment by Defendant against him, and filing a charge of discrimination with the OCRC.

65.     Defendant knew that Plaintiff engaged in protected activity.

66.     Once Plaintiff engaged in the aforementioned protected activity, Defendant purposefully retaliated against Plaintiff by taking the following non-exhaustive list of actions: (1) denying him reasonable accommodation and/or failing to continue its obligation to engage in the interactive process; (2) holding his use of medical leave for his disability as a negative factor in Plaintiff's employment given he was forced to utilize FMLA leave in lieu of a reasonable accommodation even though Estes permits employees to work modified schedules or other reasonable accommodations rather than take unpaid leave; (3) terminating his employment; (4) refusing to permit him to return to work despite being cleared by his physician to work with an accommodation; and (5) otherwise treating him less favorably than similarly situated employees who after reasonable opportunity for discovery are not disabled, actual or perceived, and who do not have a record of a disability and/or FMLA leave.

67.     By Defendant's foregoing omissions and commissions, Defendant has violated Ohio Revised Code § 4112.02(I).

68.     As a direct and proximate result of Defendant's conduct, Plaintiff has suffered and will continue to suffer economic and non-economic damages, including but not limited to emotional distress and the loss of compensation, benefits and other terms, privileges and conditions of employment for which Defendant is liable.

69.     Defendant's conduct was willful, wanton, reckless, and/or malicious for which Defendant is liable for compensatory damages, punitive damages, reasonable attorneys' fees, costs, declaratory and injunctive relief, and all other relief available under Ohio law.

## VI.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that this Court enter judgment against Defendant, as follows:

(a) Ordering Defendant to pay back pay and benefits;

(b) Ordering Defendant to reinstate Plaintiff in his position, or alternatively, pay front pay and benefits;

(c) Order Defendant to pay monetary relief in an amount sufficient to compensate Plaintiff for his emotional distress, including pain and suffering;

(d) An Order for declaratory judgment that Defendant's actions as complained of herein violate the FMLA and Ohio law;

(e) An Order for injunctive relief prohibiting Defendant from its continued implementation of its policy against Plaintiff and all other employees;

(f) Awarding Plaintiff costs and reasonable attorneys' fees associated with this action;

(g) Ordering Defendant to pay Plaintiff his compensatory damages;

(h) Ordering Defendant to pay punitive damages;

(i) Ordering Defendant to pay pre-judgment interest and post-judgment interest; and

(j) Directing such other and further relief as the Court may deem just or appropriate.

Respectfully submitted,

**BRYANT LEGAL, LLC**

*/s/ Matthew B. Bryant*
Matthew B. Bryant (0085991)
3450 W Central Ave., Suite 370
Toledo, Ohio 43606
Telephone: (419) 824-4439
Facsimile: (419) 932-6719
Email: Mbryant@bryantlegalllc.com

*/s/ Daniel I. Bryant*
Daniel I. Bryant (0090859)
1550 Old Henderson Road, Suite 126
Columbus, Ohio 43220
Phone: (614) 704-0546
Facsimile: (614) 573-9826
Email: dbryant@bryantlegalllc.com

*Attorneys for Plaintiff*

## JURY DEMAND

Plaintiff requests a trial by a jury of eight (8) persons.

*/s/ Matthew B. Bryant*
Matthew B. Bryant (0085991)

*Attorney for Plaintiff*